The case number 13-3071 might involve a lifesaver and others versus Eric H. Holden. Mr. Murphy for the petition. Good morning, your honors. Attorney Troy Murphy on behalf of the petitioners Lyubov Slaezar, Vladislav Slaezar, and Denny Slaezar. Your honors, at this time I'd respectfully request four minutes for rebuttal. Thank you. Thank you, your honors. Your honors, we are here on a denied application for asylum, withholding of removal, and withholding of removal under the Convention Against Torture out of the Detroit Immigration Court. Your honors, we believe that there are two fundamental issues before this honorable court with respect to this denied petition. One is whether or not the Board of Immigration Appeals, as I will likely refer to as the board from here on after, committed legal error in holding that the respondent's asylum application was not deemed timely filed based on exceptional circumstances. And two, whether substantial evidence supports both the immigration judge and the board's decision to deny the petitioner's applications for asylum, withholding of removal, and withholding of removal under the Convention Against Torture. Your honors, I'd like to start with the application and the reasons that the immigration judge and the BIA, or the board, denied this particular application. And your honor, one of the statements that keeps coming to my mind is because of the way the immigration judge worded it, was that the immigration judge found a number of inconsistencies with respect to Ms. Slajezar's testimony in her multiple hour individual hearing before immigration judge Hacker. Your honors, the immigration judge, however, with respect to those inconsistencies, indicated that the most glaring inconsistencies as to the petitioner's claim related to how and when the petitioners came to the United States. Your honors, they came to the United States in 2003. Obviously, given the age of the children, the children didn't have much recollection with respect to how they entered, when they entered, what documents they did or didn't have. So the only testimony in this case was that of the mother, Lajabov Slajezar. Your honors, it's interesting to note, and the reason that we bring the crux of this appeal before this honorable panel, is the fact that petitioner's asylum application was not filed until October of 2005. This would be outside the one year time frame that statutorily is required to file an asylum application from the date of entry. Now, mind you, your honors, the discrepancy in the date of entries at issue in this case are May 9th, 2003 and May 22nd, 2003. We're talking about a discrepancy of 13 days. We're not talking about a discrepancy of years. Again, the immigration judge found the most glaring inconsistencies with respect to the wonderful country. Your honors, the immigration judge found that based on a collateral application for adjustment of status that was filed with United States Citizenship and Immigration Services, the administrative branch of the Department of Homeland Security, was, there was an entry indicating she entered on May 22nd, 2003. The respondent, or the petitioner's testimony at her individual hearing before the immigration court was that she entered on May 9th, 2003. Now, your honor, this is exacerbated basically on the level of two errors by two different prior counsels. Your honors, the first is that Ms. Slyazar retained attorney Simon Edelstein from the hearing on May 19th, 2003, which would be three days before the admission date listed on the I-485 application to adjust status. What makes this problematic is at the individual hearing, Mrs. Slyazar's new counsel, who represented her at that individual hearing, attempted to introduce a legal contract, an attorney-client contract or letter of representation, wherein Simon Edelstein and the firm of Barry Moorman acknowledged in exchange for the sum of $4,000 that they were going to file and represent the petitioners with respect to an asylum application before the requisite governing body. There is also a letter of August 28th, 2003, which is in the record as well as an attachment to prior counsel's appeal to the Board of Immigration Appeals, wherein Mr. Edelstein sent the petitioners a letter indicating he was actually working on the application as the petitioners believed he would be doing, believing they, understanding they had retained him two months prior. Just let me interrupt because there's no doubt everything that you're reciting is a correct version of what occurred, but what seems to be the answer to every argument raised in this case is the credibility finding. That seems to, even as to timeliness, that seemed to be the resolution of it. So it sort of boils down to what, if anything, we can do in reviewing credibility determinations and what's the standard on that. Well, Your Honor, that's a great, that's a great question and we addressed that in our brief and you're correct, Judge, that this Honorable Court generally lacks jurisdiction to review the denial of asylum based on untimeliness. However, Your Honors, this court can review untimeliness if the applicant raises a question of law or a constitutional issue. This is what we contend the petitioners fall within in the instant case. Your Honors, again, the Slaizer family retained counsel. They relied on an attorney-client privilege, they paid money, they received a piece of paper that said, we're going to do X, Y, and Z for you. They received a letter two months later saying, we're working on it. They received bills from the firm in June, July, and August, I believe, if my memory is serving me correctly, of that year for services that were allegedly being rendered. It wasn't until February of 2005 that Mr. Edelstein actually acknowledged to Ms. Slaizer, yeah, I didn't do anything that we told you we were going to do, nor have I done anything that the contract indicated. Well, Judge, Guy has asked the question, and it's very essential, your client must demonstrate credibility as a threshold matter before the merits of her application under the Convention Against Torture can be considered. That's correct. And your client was deemed incredible. Do you think that finding by the administrative law judge was incorrect? I do, Judge. I'm not going to say that there were other inconsistencies, but the reality is when you're in a trial of multiple hours and there's an application over here, I mean, this administrative record is quite substantial with applications that went both to USCIS and that were presented before the immigration court. There are errors. I've been doing immigration law for probably about a decade, your honors, and it's inherent. There's just inputs of information that are wrong. Somebody relies on somebody else to do the paperwork. And the other errors, aside from the credibility issue and what the judge, I mean, the immigration judge says out of all the inconsistencies, the most glaring are with respect to her entry, which gets back to this whole I did or I didn't retain prior counsel, which then gets into it would have all been rectified had the second attorney, actually her third attorney, had that attorney complied with the requirements to submit the documents within the requisite time period prior to the individual hearing. So all that attorney had to do was take that attorney-client contract and take that August 2003 letter and take those three billings and say, here you go, I'm giving these to you 15 days before trial. Everything's good. Unfortunately, he walked in on the day of trial and said, hey, I'd like to submit these to corroborate her testimony. And the judge denied that. And what is exacerbated more by that is then when the immigration attorney for the Department of Homeland Security was engaging in the line of questioning, the immigration judge actually proactively on behalf of the immigration attorney said, in order to prove that her testimony is inconsistent, wouldn't you like to introduce the I-94 that says she didn't enter until May 22nd since she's saying she entered on May 9th? Wouldn't you also like to introduce the I-485 application, which is the adjustment of status to register permanent resident or adjust status, so that you can also prove on that application it said May 22nd, not May 9th, as she alleges? So the immigration attorney didn't submit these supplemental documents in the requisite time period before trial. And in fact, the immigration attorney, or the government attorney, didn't even, on their own volition, move to have them admitted. So after denying Ms. Slideside's attorney's attempt to get something in outside the purview of the advance filing deadline, the immigration judge not only permits the government attorney to do it, but actually informs them, hey, you might want to admit this. And then does so despite the fact having just precluded petitioners from doing the exact same thing. Your Honor's... What is that... To what issue does that relate? Well, Your Honor, I believe that's an abuse of discretion. I believe that when you have one attorney on their own volition saying, I want to submit proof that she retained counsel, and she was under a reasonable assumption that things were being done, then she didn't find out until 2005, and she filed within, I believe it was nine or ten months after she found out, which was one month after the I-45 was denied. You have one attorney voluntarily saying, I want to submit this, and the judge says no. You have the other attorney not even asking... I gather you think this goes to the timeliness issue. And I gather that the upshot of this is that you're, although this seems awfully factual to me, I gather at the end of the day, the legal issue that you would argue that gives us jurisdiction to review that would be that whether or not your client should, your client's application should be deemed timely, even though she did not meet the requirements of Lozada with respect to her counsel's representation. Your Honor, I'm out of time. If I may respond to that. Just respond briefly. Yes, Your Honor. Your Honor, I believe that this Court has held in, and if you'll give me one moment just to find the case, in Jom v. Gonzalez, Your Honors, this very honorable Court ruled that the requirements of Lozada are not necessary when the record discloses that counsel was clearly lacking in competence and diligence. And if you follow the fact pattern in Jom, it was basically that the attorney was unable to introduce witnesses or documentary evidence because he didn't comply with the local 10-day rule requiring advanced submission. That's what we have here. The attorney tried to get the attorney-client contract and the letter two months later and the three billings in, but he didn't comply with the advanced submission of evidence. So the fact pattern is the same, albeit instead of a witness list, it's an attorney-client contract and communications. Thank you, Your Honors. May it please the Court, Claire Workman for the Attorney General, the respondent in this case. The agency's adverse credibility determination is the only issue properly before this Court. The timeliness issue is not before this Court because the Board did not address it and did not need to address it because the adverse credibility determination was dispositive of all of the petitioner's claims for relief and protection. Petitioners misunderstand that this Court's jurisdiction to review the untimeliness finding, they claim that this Court does have jurisdiction because they're raising a question of law. We dispute that, but that's irrelevant to this case because it's a bedrock principle of administrative law that this Court only reviews the final agency decision, the final order, and in that case, the Board only upheld the adverse credibility determination. What avenue do we have, if any, relative to reviewing credibility determinations? Those are reviewed, Your Honor, for substantial evidence, whether the record compels reversal of the adverse credibility finding, and in this case, petitioners have not shown that it does. In fact, in their opening brief, they've waived their challenges to the adverse credibility finding because they don't meaningfully challenge all of the numerous inconsistencies that support the adverse credibility finding, and those include, first, not only, as was discussed by Petitioner's Counsel, the contradictory evidence regarding the date that petitioners entered and how they entered, whether they entered with the lead petitioner using her own passport or whether she used a fraudulent passport in another person's name. Well, some of that, but for the REAL ID Act, wouldn't even be relevant to credibility because arguably, it doesn't really go to the heart of the matter. That's possible, Your Honor, but of course, this is a post-REAL ID case, so any inconsistency, any discrepancy can be relied on, and because many of them do go to the heart of the claim in any event, but altogether, the totality of the evidence, that does not compel a reversal of the adverse credibility finding. The second reason that the immigration judge gave was the contradictory evidence as to whether Ms. Suizar even worked as a social worker in the Ukraine, which was the basis of all of her claims, or whether she did not work at all, as indicated on the materials with her Adjustment of Status application. Third, if she did, in fact, work as a social worker, there's contradictory evidence as to when and how she left her job. Fourth, the discrepancies about whether she hid in a village for about five months before coming to the United States, and if she wasn't hiding, how she earned a bachelor's degree during that time, and she never testified that she was in school during the alleged events that support her claim. And fifth, her former United States citizen husband, when he offered to marry her because her attorney wasn't doing anything to help her, her former attorney, that makes no sense because at that time, she thought that he had filed the asylum application for her. And petitioners claim in their reply brief that they incorporated by reference in their untimeliness finding to the adverse credibility determination. But they, in addition to not acknowledging that the board had no need to address the untimeliness question and that it's not before this court, none of the arguments in their brief have these numerous discrepancies that I've just discussed. They've never contested, either before the board or this court, the contradictory evidence about whether the lead petitioner had a social worker job, whether she resigned or was fired and when, how she earned her bachelor's degree while she was in hiding, and why she never mentioned going to school, and the nonsensical story about why she married her former United States citizen husband. These and other insufficiently explained inconsistencies are specific and cogent reasons for the adverse credibility determination that is supported by substantial evidence in the record. With respect to the evidence that DHS submitted, it's not my recollection of the record that petitioners accurately described because my recollection on pages 222 to 223 are that the DHS attorney moved to admit the asylum application, the I-94, and a copy of the 2001 passport. And the counsel at that time did not object to this evidence, but in any event, the argument that DHS should not have been allowed to submit this evidence was not exhausted below, so this court can't review it. And in any event, also, the rules for impeachment evidence before the immigration judge, they're not subject to the same, now it's a 15-day rule in advance when you have to submit evidence. Would the government be opposed to our court granting a stay in this case? Yes, Your Honor, for the reasons expressed in our opposition to Petitioner's stay motion. They did not meet their burden. It's their burden to show a likelihood of success on the merits, which they didn't do. It's also their burden to meet all of the other Niken factors, which they did not do, so we would oppose a stay, Your Honor. I gather that removal is not imminent, so we should have ample opportunity. You would advise us if there is a reason for us to take action on the stay before we could get an opinion in this case out in the normal course of things, wouldn't you? Yes, Your Honor. Yes, DHS has not indicated that removal is imminent. If they do, then I would notify the court, Your Honor. What about the threshold issue of credibility here? The administrative law judge found that the testimony was incredible. I really can't understand on what basis that was found. Well, Your Honor, the five reasons that the immigration judge gave, which were upheld by the board, include the contradictory evidence about the date that Petitioner's entered the United States and how they entered, whether they entered on the lead Petitioner's own passport, or whether they entered with a fraudulent passport and another name. Secondly, the contradictory evidence about whether she actually worked as a social worker in Ukraine, because she stated on the adjustment of status materials that she had no employment in Ukraine. Third, if she did work as a social worker, there's contradictory evidence about whether she resigned from that job and when that happened, or whether she was fired, as she later claims, and that she was fired when she was in the United States, when she first claimed that she had resigned before she left Ukraine. And then there's evidence indicating that she was released from her job at a date when she did not allege. And also... Well, she testified that she had been receiving phone calls threatening her life and the life of her children. Yes, Your Honor, that was found not credible. Yeah. So those are not considered facts for this case. And the other two reasons for the adverse credibility determination are that whether she actually did hide in a village for five months before leaving, and if she wasn't hiding, how she managed to earn a bachelor's degree during that time, and why she never mentioned in testimony that she was going to school. And then finally, the offer of marriage from her former husband, a United States citizen, who offered to marry her because her former attorney wasn't doing anything, but she thought at the time that he was doing something, that he had filed her asylum application. So if there are no further questions, I would ask that the court deny this petition for review because the record fails to compel reversal of the adverse credibility determination. Okay.  Thank you, Your Honor. Your Honor, as I will do my best to address all of the topics that Respondents' Counsel proffered to this honorable panel. Your Honors, first of all, Respondents' Counsel would indicate that the Board of Immigration Appeals did not address timeliness, and they only addressed adverse credibility, therefore the adverse credibility finding is not before this honorable court. That's quite honestly the farthest from the truth, Your Honors. The adverse credibility finding in this case, as the immigration judge put it, most glaringly reflects on how and when they entered the U.S., which goes to the untimeliness factor because the documents that proved that they timely filed were precluded from admission before the immigration judge. So to say that it's not before this honorable court, they are so intertwined in this case because the immigration judge says, I find various inconsistencies, but the most glaring I find are with respect to when she was admitted and why the application wasn't filed until 2005. The adverse credibility finding is based on the untimeliness, so therefore it is properly before this honorable court. Your Honors, one of two things has to be true. Either the immigration judge addressed the issue of timeliness, and the Board of Immigration Appeals addressed the issue of timeliness, and it's properly before this honorable court, or despite in the petitioner's appeal to the Board of Immigration Appeals, wherein I believe on pages 14, 15, and 17 of the administrative record, prior counsel in his brief to the Board of Immigration Appeals directly talks about the issue of timeliness and how it was found untimely because this other evidence from attorney Simon Edelstein was not admitted. So if that's the case and the Board in its opinion didn't address it despite it being in the IJ's decision and prior appeal to the BIA, then it must be remanded so that the BIA can address that issue. Your Honors, the reality is page two, most of page two of the Board of Immigration Appeals decision does address that issue. So it is properly before this honorable court. Your Honors, as to the fact that respondents would argue that there was a waiver of the challenge to the adverse credibility finding, Your Honors, as I mentioned in my brief, the adverse credibility and the untimeliness arguments in this case are so intertwined that I basically would have repeated, I could have cut and pasted the same five pages. Rather than bore this honorable court with, in essence, reading what would look like a waiver. We just incorporated our prior arguments by record, by reference. What are you asking this court to do? Your Honors, we're asking this honorable court to do one of two things. Either remand the case back and allow the admission of that evidence regarding her retainment of Mr. Edelstein to prove that she really did enter on May 9th, not May 22nd, as evidenced by an attorney-client contract signed by an attorney in this country on May 19th, three days before their finding that she entered. And that would then, we think, provide an exceptional circumstance to get her within the one-year time, the permissive filing outside of the statutory one-year time frame, which would then get her back in the asylum frame, which obviously the burden in proving asylum is much, much lower than that for proving withholding of removal. Otherwise, we're asking this honorable court simply to look at the evidence and look at the just horrible things that were done to this lady that I don't want to go into because her children are in this honorable court. But I think the testimony at the hearing and both of the briefs acknowledge this lady was put through a lot. I see my time is up. Thank you, Your Honors. Thank you both for your argument. We'll consider the case carefully.